*LAW OFFICE*
*D. GAYLE LOFTIS*
*210 RIVER STREET*
*HACKENSACK, NEW JERSEY 07601*
*(201) 646-9141*
*D.L.6184*
*Attorney for Plaintiff*

| | |
|---|---|
| **JENNIFER BLOOM,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**JERSEY CITY MUNICIPAL UTILITIES AUTHORITY, in both individual and Jersey City Municipal Authority official capacities: THE ESTATES OF GERARD LETIZIA, HOWARD JACKSON, and GEORGE KELLY, EILEEN GAUGHAN, KATHLEEN HARTYE, KATHLEEN CURRAN, WILLIAM MACCHI, THOMAS KANE, BARBARA GORDON, ELNARDO WEBSTER, JR., THE CITY OF JERSEY CITY, and in both individual and Jersey City official capacities: JERRAMIAH HEALY, CARL CZAPLICKI, BRIAN O'REILLY and JOHN DOES (1-15), individuals whose names are presently unknown,**<br><br>**Defendants.** | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**CIVIL ACTION NO.: 06–3526 (WJM)**<br><br>**CIVIL ACTION**<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, Jersey City Municipal Utilities Authority, in both individual and Jersey City Municipal Authority Official Capacities: the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**, says:

-1-

## COUNT ONE
### [42 U.S.C. §1983]

1.      Plaintiff, Jennifer Bloom (hereinafter "Bloom"), at all times relevant to the events alleged herein, resided in the City of Jersey City, County of Hudson, State of New Jersey, and is a female.

2.      The Defendant , Jersey City Municipal Utilities Authority (hereinafter "JCMUA") is entity created and reorganized in 1997 by Jersey City ordinance pursuant to N.J.S.A. 40:14B-6 *et seq.*, for the purpose of providing  sewerage and water systems  and management of same to the residents, businesses and inhabitants of Jersey City, and is a public body politic and corporate, constituting a political subdivision of the State established as an instrumentality exercising public and essential governmental functions to provide for the public  health and welfare, and as such may be sued and sue in its capacity.

3.      As a municipal utilities authority, the Defendant  JCMUA is statutorily recognized to be an autonomous agency which is not to be subject to the imposition of control of the municipality that has authorized its creation.

4.      By virtue of N.J.S.A. 40B:14-4, Jersey City appoints individuals to serve as Commissioners to the JCMUA, and in which Commissioners are vested the powers of the authority.

5.      The JCMUA Commissioners, the Executive Director of the JCMUA, and Webster constitute the policymakers for the JCMUA for all times relevant to this Complaint.

6.      The Defendant, City of Jersey City (hereinafter "Jersey City"), is a unit of local government authorized under Title 40A of the New Jersey Statutes to conduct business on behalf of the municipality throughout the State of New Jersey .

7.      During the times relevant to this Complaint, Defendant  Gerard Letizia (hereinafter

-2-

"Letizia") , who is now deceased, served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.  The estate of Letizia is named in this Complaint to represent and defend on behalf of  the actions previously taken by Letizia while he was alive.

8.      Upon information and belief, Defendant Letizia lived in Jersey City, in the County of Hudson, State of New Jersey.

9.      During the times relevant to this Complaint, Defendant  Howard Jackson (hereinafter "Jackson"), who is now deceased, served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.  The estate of Jackson  is named in this Complaint to represent and defend on behalf of  the actions previously taken by Jackson while he was alive.

10.      Upon information and belief, Defendant Jackson lived in Jersey City, in the County of Hudson, State of New Jersey.

11.      During the times relevant to this Complaint, Defendant George Kelly  (hereinafter "Kelly") , who is now deceased, served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.  The estate of Kelly is named in this Complaint to represent and defend on behalf of  the actions previously taken by Kelly  while he was alive.

12.      Upon information and belief, Defendant Kelly lived in Jersey City, in the County of Hudson, State of New Jersey.

13.      During the times relevant to this Complaint, Defendant  Eileen Gaughan (hereinafter "Gaughan"), served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.

14.      Upon information and belief, Defendant Gaughan  lived in Jersey City, in the County of Hudson, State of New Jersey.

15.     During the times relevant to this Complaint, Defendant Kathleen Hartye (hereinafter "Hartye"), served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.

16.     During the times relevant to this Complaint, Defendant Kathleen Curran (hereinafter "Curran"), served as a Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.

17.     Upon information and belief, Defendant Curran lived in Jersey City, in the County of Hudson, State of New Jersey.

18.     During the times relevant to this Complaint, Defendant William Macchi (hereinafter "Macchi"), served as a Commissioner or Alternate Commissioner appointed by Jersey City to serve on the Board of Commissioners for the JCMUA.

19.     Upon information and belief, Defendant Macchi lived in Jersey City, in the County of Hudson, State of New Jersey.

20.     During the times relevant to this Complaint, Defendant Elnardo Webster, Jr. (hereinafter "Webster"), was legal General Counsel to the JCMUA and acted as an agent, both directly and indirectly, on behalf of the JCMUA and the Commissioners both individually and collectively.

21.     The residence and domicile of Defendant Webster is not known, however, his place of business was located in the Town of West Orange,  in the County of Essex, State of New Jersey.

22.     During the times relevant to this Complaint, Defendant Thomas Kane (hereinafter "Kane"), served as the Executive Director acting at the direction of Defendant JCMUA-Commissioners and on behalf of JCMUA .

-4-

23.     Upon information and belief, Defendant Kane lived in Kearney, in the County of Hudson, State of New Jersey.

24.     During the times relevant to this Complaint, Defendant Barbara Gordon (hereinafter "Gordon"), served as an employee of the JCMUA and acted as the Commissioner's liaison to that entity.

25.     Upon information and belief, Defendant Gordon lived in the City of Jersey City, in the County of Hudson, State of New Jersey.

26.     The JCMUA Commissioners, Kane as the Executive Director of the JCMUA, and Webster  constitute the policymakers for the JCMUA for all times and actions relevant to this Complaint.

27.     During the times relevant to this Complaint, Defendant Jeremiah Healy (hereinafter "Healy") was the duly elected Mayor for the City of Jersey City.

28.     Upon information and belief, Defendant Healy lived in the City of Jersey City, in the County of Hudson, State of New Jersey.

29.     During the times relevant to this Complaint, Defendant Carl Czaplicki (hereinafter "Czaplicki") was the aide and Chief of Staff for Defendant Healy.

30.     Upon information and belief, Defendant Czaplicki  lived in the City of Jersey City, in the County of Hudson, State of New Jersey.

31.     During the times relevant to this Complaint, Defendant Brian O'Reilly (hereinafter "O'Reilly") was the Business Administrator for the City of Jersey City.

32.     Upon information and belief, Defendant O'Reilly  lived in the City of Jersey City, in the County of Hudson, State of New Jersey.

33.     Healy, Czaplicki and O'Reilly, constitute the policymakers Jersey City  for all times and actions relevant to this Complaint.

34.     Defendants John Does (1-15), who are individuals whose names are presently unknown, are employees within Jersey City and/or the JCMUA and who have acted to cause the harm that resulted to Plaintiff.

35.     This case arises under the United States Constitution and under federal law, more particularly the First,  Fifth  and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 as well as the Constitution and laws of the State of New Jersey.

36.     This Court has jurisdiction of this case under and by virtue  of  28 U.S.C. §§ 1331, 1343(a)(3),and 1343(a)(4) and may exercise  pendent jurisdiction over such state claims  and causes of action as may be alleged herein.

37.     Venue properly resides with this Court pursuant to 28 U.S.C. §1391(b).

38.     On September 12, 2003, the Plaintiff was authorized by JCMUA resolution to be hired by Defendant Kane as an agent of the JCMUA and its Commissioners to be its Director of Administration and Financial Management.

39.     The prior Director of Administration and Financial Management was a male who did not have an MBA and was not a CPA.

40.     At the time of her employ, Bloom was licensed by the State  as a CPA, possessed a MBA, was working toward obtaining her Certificate as a Municipal Finance Officer and taught as a professor on subjects in her field.

41.     At the time of her employ, the Plaintiff was informed by Defendant Kane that her priority task was to analyze the performance of United Water of Jersey City (hereinafter "United

-6-

Water") relative to how United Water complied with the expectations and contractual arrangements between it and the JCMUA.

42.     The Plaintiff began to find discrepancies between representations of United Water and documentation regarding operations and activities performed by United Water allegedly under the contract terms of the agreement that existed between it and JCMUA.

43.     In or about January 2004, and at the Plaintiff's urging and with the encouragement of JCMUA Senior Staff Counsel at the time, Mark Curtis, Esq., the JCMUA obtained a forensic accounting report and analysis of the operations and activities performed by United Water allegedly under the contract terms of the agreement that existed between it and JCMUA.

44.     The forensic accounting report confirmed the findings of the Plaintiff and further substantiated concerns she voiced verbally and in writing that the present JCMUA arrangements and operations conducted by United Water, resulted in increased costs to the JCMUA which would necessitate a rate increase, and were incompatible with  public policy concerning public health, safety and welfare, and in violation of state law.

45.     Over the next year and ten months, the Plaintiff repeatedly brought to the attention of each of the named the Jersey City and JCMUA Defendants, excluding Defendant Gordon, the issues which follow but are not limited to:

a.     The Billing Collection Incentive (hereinafter "BCI") provision of the contract between the JCMUA and United Water was improperly calculated by United Water during the period of 2000 to 2002 and information had been received the United Water intentionally removed figures from the calculation to increase its BCI claim;

b.     The maintenance efforts of United Water were being directed to water systems

outside of the JCMUA so that minor maintenance problems (a United Water obligation) were not timely handled, and also were permitted to progress to major problems such that JCMUA would be required to bear the entire expense of the repair and repairs would require longer periods of time to correct the problems;

c.    Over and under-billing of customers by United Water creating difficulties in collection and income projections, and decrease of revenues to the JCMUA despite increased rates and usage;

d.    Lack of location and testing of shut-off valves by United Water resulting in significant loss of water in the event of a water break;

e.    Inflation of United Water staffing by the categorization of part time employees as full time in order to appear to meet minimum contract staffing requirements;

f.    The inability of United Water to document work they report as performed, such as flushing meters;

g.    The inability of United Water to document 20-25% of the "unaccounted for water" that represented the difference between water filtered and produced at the reservoir's plant and the water billed to residential and bulk JCMUA customers;

h.    Possible improper and uncompensated diversion by United Water of water from Hoboken and Secaucus stations;

i.    Questions concerning the legality of the payment to Jersey City monies characterized as Franchise payments and which transfer was in excess of 5% of the annual surplus of the JCMUA and was further prohibiting the ability of the JCMUA to embark on various capital improvements such as projects to replacement the water mains of the

system which exceeded 100 years of age in many instances;

j.     A number of other issues that impacted on the financial ability of the JCMUA to comply with the multi-million dollar annual payments to Jersey City required by a Franchise Agreement that exists between Jersey City and JCMUA, as well as to the basis for the Franchise Agreement;

k.     Questioning the conflict posed by using the same accounting firm to provide audit services to the Jersey City  and to then advise and audit the JCMUA;

l.     Questioning the conflict posed by using the same accounting firm to provide consulting services to the JCMUA and to then audit the JCMUA;

m.     Objection of the payment of Rosemary Yorey who was on the payroll of the JCMUA but worked unsupervised out of City Hall;

n.     Objection from July of 2004 to a proposed reduction of the proposed North Bergen Connection fee, the discounting of the North Bergen operating and maintenance fee, the faulty United Water billing practices, the proposed discounted bulk water rate for Parsippany service; and the excessive franchise payments to the City of Jersey City.

46.     In August of 2004, Bloom informed the Commissioners that pursuant to IRS regulations and confirmation with IRS, per diem payments to Commissioners were required to be subject to withholding for social security and medicare tax.

47.     Defendant Commissioners Hartye and Gaughan requested through Defendant Kane that the Plaintiff not comply with the law for such payments made by JCMUA to them.

48.     Plaintiff refused to comply with the requests of Defendants Hartye and Gaughan despite Defendant Kane relaying to her that Defendants Hartye and Gaughan were angry with her

for implementation of the regulation.

49.     As a retaliatory act Defendant Gaughan initiated an investigation into the compensation of Plaintiff and the types of items for which withholding was being applied to benefits received by the Plaintiff.

50.     At the JCMUA meeting of September 30, 2004, Defendants Gaughan and Kelly publically chastised the Plaintiff for her enforcement of the IRS regulations and for her enforcement of the JCMUA bereavement pay policies.

51.     When the position of the Plaintiff was supported by General Counsel, Mark Curtis, Esq., Furthermore, the Commissioners issued instructions that Plaintiff and Mark Curtis would be required to punch time clocks.

52.     It was only after the Commissioners were informed that the policy would need to include Kane, that the order for Plaintiff to punch a time clock was rescinded.

53.     In a written memo to Defendant Kane on October 1, 2004, Plaintiff requested the support of Defendant Kane in deflection of the hostility and harassment by the Defendant Commissioners and noted that she had a duty as the finance officer of the public utility authority to challenge deficits she noted in the United Water billing practices, the $11 million dollar deficit and unreasonable $2.5 million BCI claim asserted by United Water.

54.     In March of 2005, Defendant Kane informed Plaintiff that Defendant Gaughan was objecting to the provision of a vehicle to Plaintiff even though the Plaintiff was provided one as part of her employment package.

55.     In May of 2005, Bloom informed the Commissioners that pursuant to IRS regulations and confirmation with IRS, employer-provided cell phones were considered a taxable fringe benefit.

56.     Inquiry by Defendant Kane on behalf of the JCMUA Commissioners named herein, was made to the Plaintiff as to whether she could ignore the IRS regulation and "keep things the way they were."

57.     Plaintiff refused to violate IRS regulations concerning the tax laws and regulations and made that refusal known to Defendants Kane, and JCMUA Commissioners named herein.

58.     In early April of 2005, Bloom attended a meeting at Jersey City Hall with Defendants Letizia, O'Reilly, Czaplicki and three city council members.

59.     At that meeting the Plaintiff voiced her question of and objections to the Franchise Agreement and the payments it required between Jersey City and JCMUA; to the United Water inefficiencies and any payment of $2.5 million requested by United Water in light of known discrepancies; to proposed water and sewer fees which would  increase the funds paid by JCMUA customers so that Jersey City and United Water payments could be made at levels demanded by both entities.  Furthermore, the Plaintiff indicated to those present that increase of the water and sewer fees would appear to be a gimmick employed to permit Jersey City to avoid stating it was increasing taxes while using its appointed Commissioners to compel the JCMUA to do so.

60.     Throughout her employment and subsequent to her voiced complaints on the afore-noted matters of public concern,  the Defendant JCMUA Commissioners engaged in a number of retaliatory actions that permitted Plaintiff to be demeaned in public and to have her authority diminished in the JCMUA, in agencies with which the JCMUA interacted, and in front of her staff.  By way of non-exclusive example, those actions included, but were not limited to:

a.      Defendant Kane would stroke the hair of the Plaintiff while she attended JCMUA
        meetings and would play and twirl it around his fingers despite Plaintiff 's objection

and request that he stop same.  No reprimand was ever given to Defendant Kane by any Commissioner for such actions performed in their presence;

b.    A male JCMUA attorney who had been the subject of a prior complaint of sexual harassment, was permitted to make a sexually harassing comment to her and her complaint regarding same was not addressed;

c.    A subordinate department employee, Albert Anderson, was repeatedly insubordinate to Plaintiff in the presence of other employees, refused to take direction from Plaintiff, and repeatedly went over the head of the Plaintiff to complain to the Commissioners; yet, he was not disciplined by Defendant JCMUA Commissioners or Defendant Kane.

d.    Other department employees who cooperated with the Plaintiff were ordered by Defendant Kane and Defendant Letizia to be moved from the offices and direction or control of the Plaintiff;

e.    At the instruction of Defendant Letizia,  Plaintiff-scheduled refresher and update training and cross-training of all department employees on the Edmunds finance program was cancelled on the late afternoon prior to the scheduled training session of May 28, 2005;

f.    On April 18, 2005, Defendant Webster called the Plaintiff to inform her of an April 19, 2005 meeting with the State Division on Local Government Services and that Bloom was specifically not invited to the meeting because the Defendant Commissioners and Jersey City representatives "did not trust" what she would report to the State.  Plaintiff was warned to "be careful";

g.      At the instruction of Defendant Letizia, Plaintiff was specifically ordered  by JCMUA employee Beckmeyer to be excluded  from meetings that had a direct impact on Plaintiff's job duties, inclusive of an April 19, 2005 meeting with the State Division on Local Government Services at which the financial ability of the JCMUA to make payments to Jersey City and the JCMUA budget were to be topics;

h.      At the instruction of Defendant Letizia, Barbara Gordon, Assistant Finance Officer and subordinate of Plaintiff, notified the Commissioners of the re-scheduling of the April 28, 2005 meeting to May 9, 2005.  Plaintiff was not notified of the change;

i.      In the beginning of June of 2005, Angelo Rubano, a JCMUA employee who aware of the gender discrimination and harassment directed toward the Plaintiff in her workplace, and who also worked with Plaintiff to analyze the accuracy of the United Water shut-off lists in regard to revenues for JCMUA, was threatened with the loss of his employment purportedly based on his failure to have a driver's license, despite the absence of such a requirement in his job description.  Bloom was told by Defendant Kane that the actions were being directed against Rubano as the Commissioners wanted to harass her, and specifically that Defendant Letizia wanted "her head on a platter";

j.      During the week of June 13, 2005, Plaintiff was the only member of the Executive Board who did not attend the convention in San Francisco.  Contrary to long-standing practice, Defendant Letizia ordered Defendant Kane to appoint the male Fleet Supervisor, who was not a member of the Executive Board, to act as the Acting Executive Director in the absence of Defendant Kane, rather than Plaintiff.

-13-

61.     Following the telephone call from Defendant Webster on April 18, 2005, Plaintiff had a conversation with Defendant Healy concerning her proposed exclusion from the April 19, 2005 meeting with the State Division on Local Government Services.

62.     Defendant Healy informed the Plaintiff that he had been aware for several days that the meeting was scheduled and that she was not to be included. He asked the Plaintiff if she "could work with his people". The Plaintiff replied that she was working in what she felt was the best interest of the public.

63.     On April 21, 2005, the Plaintiff wrote a memo to Defendant Kane which made a formal complaint of the retaliatory and gender harassment to which she had been subjected and which she indicated was being directed and/or approved by Defendant Letizia.

64.     On April 29, 2005, the Plaintiff was informed by Defendant Kane that although he had prepared a response to her complaint, that he had been instructed by "the Administration at City Hall" not to respond to her complaint.

65.     On May 5, 2005, Plaintiff was informed by Defendant Kane that he had been instructed by Defendant Webster not to discuss with Plaintiff her complaint .

66.     Investigation of the Plaintiff's complaint of retaliatory and gender harassment was assigned to several, differing investigators over the several months following the April complaint of the Plaintiff.

67.     Plaintiff received correspondence from Defendant Webster dated June 13, 2005, which acknowledged that Jersey City was involved in the employment issues of Plaintiff and controlled its resolution, and further ordered her to divulge information to one investigator that had not been authorized by JCMUA resolution, but which would be ratified by the Board at it later

meeting, despite the legal requirement that the financial officer of the JCMUA not incur expenses with outside agencies or persons which had not been approved by the Commissioners in advance of incurrence.

68.    Plaintiff Bloom continued to perform the duties required of her as the Director of Administration and Financial Management until June 30, 2005 when she was summarily informed by Kane that she was immediately suspended from that position.

69.    On June 30, 2005, the Plaintiff attended the Commissioners' meeting that had been publically noticed.

70.    The June 30, 2005 Commissioners' meeting concluded without any notice being given to the public that a closed or private meeting would be held among the Defendant-Commissioners named herein and Defendants Kane and Webster.

71.    Following the June 30, 2005 Commissioners' meeting, Bloom was called into Kane's office where he had an attorney, and Kane notified Plaintiff that she was immediately suspended.

72.    Kane indicated that he did not know the reason for the suspension but was carrying out the instructions of the individual-Defendant JCMUA Commissioners and Webster.

73.    As of the time of the suspension, neither the JCMUA nor Defendants Kane and/or Webster, had notified the Plaintiff that there was to be any discussion of her work performance, nor had any public notice or notification been given that such a subject would the topic of any discussion in a closed session, nor was any vote taken at the meeting of June 30, 2005 to meet in closed session for any exception contained within the New Jersey statutes commonly referenced as the Sunshine Laws, or Open Public Meetings Laws.

74.    On July 13, 2005, Defendant Kane transmitted by hand delivery, a letter written by

Defendant Webster which purported to identify eleven areas of dissatisfaction of JCMUA with her performance and notified her that the JCMUA had determined her employment would be terminated but that she could attend a meeting on July 28, 2005 in order to be heard.

75.     Following the receipt of the July 13, 2005 letter, Bloom caused her legal counsel to request on July 20, 2005 from Defendant Kane, copies of any supportive documentation intended by the JCMUA to be used at her hearing by it in  regarding the alleged deficient performance areas, as well as a list of witnesses.  No response was provided to that request.

76.     On July 26, 2005, the Plaintiff met with the assigned investigator of her April Complaint regarding the retaliatory and gender harassment which she asserted was being directed by Defendant Letizia and in which the Defendants named in this suit were participating, directing or in which they acquiesced, in a number of ways, many of which are set forth herein.

77.     Bloom's suspension continued as Director of Administration and Financial Management until July 28, 2005.

78.     On July 28, 2005, a public meeting was held by the Defendants JCMUA Commissioners, Letizia, Hartye, Jackson, Gaughan, Curran, and Macchi, and was conducted by Defendant Webster.

79.     The meeting was conducted with the objection of counsel for Bloom and  without a) the provision of any documents to the Plaintiff or her counsel although documents were "introduced" by Defendant Webster to allegedly support the proposed termination; and  b) without sworn testimony, but rather consisted of statements that were replete with hearsay.

80.     The meeting included a memoranda of Barbara Gordon which document contained false, malicious and fabricated statements pertaining to activities and inappropriate conduct of the

Plaintiff.

81.     Based upon information and belief of the Plaintiff, Defendant Gordon memo was solicited by Defendant Letizia and the other JCMUA Defendants for the use in the termination process of the Plaintiff.

82.     The memo was intended by Defendant Gordon to be utilized to justify and support actions intended by the JCMUA Defendants to terminate the employment of the Plaintiff and remove her from the position of supervisor of Defendant Gordon.

83.     The memo was intended to injure the reputation of the Plaintiff and to subject her to the loss of good will and confidence.

84.     Within seconds, and substantially less than 60 seconds,  of the conclusion of "witness" testimony and questions by Defendant Macchi, and without any conference among the Defendant Commissioners, Defendant Letizia announced that the Board of Commissioners had found cause to terminate Plaintiff.

85.     Defendant Letizia did not specify what the cause was, nor did he indicate how "the Commissioners" had reached such a decision when they had not left their seats  or spoken with each other in the moments between the conclusion of questions to Ms.  Bloom and Defendant Letizia beginning his announcement of the decision.

86.     Following his announcement of the decision of the Commissioners, Defendant Letizia made a motion to terminate the employment of Bloom for cause.

87.     Defendant Hartye seconded the motion.

88.     Defendants Curran and  Gaughan voted in favor of the termination with Defendant Jackson abstention at the meeting.

-17-

89.     Defendants Macchi and Webster with full prior knowledge of what was intended to take place, and what in fact took place, permitted the actions of the other Defendants to take occur, and further acquiesced without objection to:   the process and manner by which the suspension took place;   the process and manner of the "hearing" that took place;   the procedures employed at the meeting in regard to the "hearing", and the termination decision that was voiced without conference among the Commissioners present at the meeting.

90.     At the September 15, 2005 meeting of the Commissioners, a Resolution concerning termination of the employment of Bloom was passed and certified by Defendant Hartye as a true copy of the resolution and action taken by the Board at its August meeting of September 15, 2005. Said formal termination was transmitted to the Plaintiff by cover letter of Defendant, Webster dated October 7, 2005.

91.     Based upon the certified Resolution, Defendants Letizia, Hartye, Jackson and Curran voted to retroactively terminate the employment of the Plaintiff to July 28, 2005, and in the Resolution added the further term and requirement that all books, records, and documentation relating or referring to the JCMUA was to be turned over to General Counsel within three (3) business days.

92.     The July hearing did not comport with the due process rights afforded the Plaintiff under federal and state Constitutions and deprived her of protected liberty interests in her employment utilizing unsworn testimony and documents not provided to the Plaintiff or her counsel until after the hearing.

93.     The hearing violated even the most basis principles of fundamental fairness and were without a residuum of legal and competent evidence to support the decision.

94.     The individuals named as Defendants in this matter are named in their individual

-18-

capacity for those actions in which they have personally engaged or participated, for those actions in which they have had knowledge, or for their acquiescence in the conduct of subordinates over which they have had control in regard to matters raised in this Complaint.

95. The actions of the all of the Defendants were intended to produce intimidation and coercion against the Plaintiff to cause her to fail to voice her objections to activities, practices and policies of the JCMUA, and when that failed, to retaliate against her.

96. In violation of her First Amendment rights, the Plaintiff has been subjected to adverse employment action, i.e. alteration of job conditions which adversely impacted on her ability to fulfil her ethical, statutory, and regulatory obligations, as well as her termination, in retaliation for her exercise of First Amendment Rights in making written and oral complaints on issues of public concern.

97. As a consequence of the actions of the Defendants, the Plaintiff has been proximately caused to suffer humiliation, extreme anxiety, loss of income and prestige, and other damages.

98. Defendants have shown a reckless and callous disregard for the federal constitutional rights of the Plaintiff in this matter as well as for those others similarly situated who would voice complaints or question the actions of the JCMUA and Jersey City, in regard to the trust obligations which both entities hold for the public and citizens and taxpayers of Jersey City.

99. The actions of the Defendants have been taken under color of state law to deprive the Plaintiff of her constitutional rights and have caused her to be harmed in the actions noted in the preceding paragraphs of this Complaint, and have been accomplished by the policymakers of Jersey City and JCMUA.

100. John Does (1-15) are individuals whose names are presently unknown, but who have

also engaged under color of state law to deprive the Plaintiff of her constitutional rights and have

caused her to be harmed in the actions noted in the preceding paragraphs of this Complaint.

101.    The aforesaid actions of the Defendants constitute a violation of 42 U.S.C. §1983

as well as violations of the Plaintiffs rights under the Constitution of the United States.


**WHEREFORE** the Plaintiffs demand judgment against the Defendants, for
compensatory damages together with interest and costs of suit, as well as counsel fees pursuant
to 42 U.S.C. §1988, and punitive damages against the individual Defendants, and such other just
and equitable relief as this Court may order.


Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, Jersey City
Municipal Utilities Authority, in both individual and Jersey City Municipal Authority Official
Capacities: the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan,
Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo
Webster, Jr., the City of Jersey City, and in both individual and Jersey City Official Capacities:
Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are
presently unknown**,** says:

## COUNT TWO
### [CEPA]

1.      Each and every allegation of Count One is repeated and re-alleged as if set forth at

length herein.

2.      As noted in Count One, a business relationship existed between Defendant Jersey

City and Defendant JCMUA relative to the provision of sewer and water services to the public.

3.      Defendants Letizia, Jackson, Gaughan, Hartye, Curran, Macchi, Kane, are each

supervisors of the Plaintiff as that term is defined in N.J.S.A. 34:19-2(d), as they have the authority

to direct and control the work performance of the Plaintiff;  had the ability to determine that she

would not be disparaged, fired or subjected to other retaliatory actions for making disclosures that

would be subject to N.J.S.A. 34:19-1 *et seq.*, [also known as the Conscientious Employee Protection Act]; had the authority to support her in her complaints that there was a violation of the law and regulations by the manner and practice within JCMUA was operating and providing water and sewer services to the public, and that the JCMUA was being adversely affected in its ability to comply with the provisions of the State statutes, regulations, and Agreements under which JCMUA operated.

4.     The actions of Defendant Webster could be considered to be in a capacity as an agent of the Defendants noted in the preceding paragraph.

5.     The Plaintiff Bloom disclosed to a supervisor within the organizations of Defendants JCMUA and Jersey City that she reasonably believed that there was a failure of compliance and a violation of the law and regulations by the manner and practice by which Defendant JCMUA was providing and operating the public sewer and water utilities and various aspects of that operation, and that those actions and failures to act were adversely affecting the ability of JCMUA to comply with the provisions of the State statutes, regulations, and agreements under which JCMUA functioned.

6.     The actions of Plaintiff noted in the preceding paragraph are protected by N.J.S.A. 34:19-3(a) and N.J.S.A. 34:19-3(c) .

7.     The Plaintiff was known by her employer to have disclosed to a public body, i.e. the State Division of Local Government Services, the Board of Commissioners, and the Jersey City Mayor and various City councilpersons, that she reasonably believed that there was a failure of compliance and a violation of the law and regulations by the manner and practice by which Defendant JCMUA was providing, or causing to be provided, water and sewer services to the public, and that those actions and failures to act were adversely affecting the ability of JCMUA to comply with the provisions of the State statutes, regulations, and agreements under which JCMUA

operated.

8.     The actions of Plaintiff noted in the preceding paragraph are protected by N.J.S.A. 34:19-3(a) and  N.J.S.A. 34:19-3(c) .

9.     The actions of Plaintiff noted in the preceding paragraphs were protected by law  and her employment termination by Defendant JCMUA was in violation of her rights under New Jersey law.

10.     The employment termination of the Plaintiff by Defendant JCMUA has proximately caused the Plaintiff to suffer damages in the nature of  emotional distress, humiliation, anxiety, and loss wages.

**WHEREFORE**  the  Plaintiff  demands judgment  against  the Defendants, for  the relief permitted by N.J.S.A. 34:19-5, inclusive of  compensatory damages together with interest and costs of  suit;  counsel fees pursuant to N.J.S.A. 34:19-5;  punitive  damages; reinstatement to the position from which she was terminated with full back pay and benefits, assessment of a fine to be paid to the State Treasurer,  and such other just and equitable relief as this Court may order.

Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas  Kane, Barbara Gordon, Elnardo Webster, Jr.,  the City of Jersey City,  and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**,** says:

## <u>COUNT THREE</u>
**[interference with prospective economic advantage]**

1.     Each  and every allegation of Counts One and Two are  repeated and re-alleged as if set forth at length herein.

2.     The Plaintiff had a reasonable expectation of continued and prospective economic

advantage in her position as the Chief Financial officer of the Defendant JCMUA absent the actions of the Defendants.

3.      The actions of the Defendants served to interfere with the employment of the Plaintiff and to result in her loss of that prospective advantage, and economic damage by means of her termination.

4.      The actions of the Defendants were not in the best interests of the public and as such were not privileged actions.

5.      Plaintiff gave notice of claims arising from the actions of the Defendants, both corporate bodies and the individuals, to Jersey City and to JCMUA which Tort Claims Notices were received by the Defendants legal representatives and entities on October 27, 2005.


**WHEREFORE** the Plaintiff demands judgment against the Defendants, individually named as the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown, for inclusive of compensatory damages together with interest and costs of suit; punitive damages; reinstatement to the position from which she was terminated with full back pay and benefits, and such other just and equitable relief as this Court may order.


Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, John Does (1-15), individuals whose names are presently unknown**, says:


## COUNT FOUR
### [defamation]

1.      Each and every allegation of Counts One through Three are repeated and re-alleged

as if set forth at length herein.

2.     The July 28, 2006 JCMUA termination " hearing" included  a memoranda authored by Barbara Gordon which document contained  false, malicious and fabricated statements pertaining to activities and inappropriate conduct of the Plaintiff and was replete with un-ascribed, anonymous hearsay included by the Defendant Gordon for malicious and personal reasons.

3.     It is also upon information and belief of the Plaintiff, that the memo of Defendant Gordon was solicited by Defendant Letizia and the other JCMUA Defendants for the use in the termination process of the Plaintiff.

4.     Defendant Gordon is not entitled to any privilege to be applied to her defamatory statements which would prevent her from having liability for such defamatory statements.

5.     The memo was intended by Defendant Gordon to be utilized to justify and support actions intended by the JCMUA Defendants to terminate the employment of the Plaintiff and  to remove Bloom from her position as the supervisor of Defendant Gordon.

6.     The memo was intended to injure the reputation of the Plaintiff and to subject her to the loss of good will and confidence.

7.     The memo constituted a defamatory statement which has caused the Plaintiff to be exposed to hatred, contempt, ridicule, loss of good will and confidence.

8.     Evidence of the damage was demonstrated by the public speaker announcement on July 29, 2006 made within the premises of the JCMUA by Defendant Hartye's daughter, Kathleen Hartye, Jr., that "ding dong the witch is dead."

9.     Plaintiff gave notice of claims arising from the actions of the Defendant, Barbara Gordon,  to Jersey  City and to JCMUA which Tort Claims Notices were received by the JCMUA and its legal counsel on October 27, 2005.

**WHEREFORE** the Plaintiff demands judgment against the Defendants, Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas  Kane, Barbara Gordon, Elnardo Webster, Jr.,  the City of Jersey City,  John Does (1-15), individuals whose names are presently unknown**,** for  compensatory damages together with interest and costs  of suit;  punitive damages, and such other just and equitable relief as this Court may order.

Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas  Kane, Barbara Gordon, Elnardo Webster, Jr.,  the City of Jersey City,  and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**,** says:

## <u>COUNT FIVE</u>
### [New Jersey Civil Rights Statute]

1.      Each  and every allegation of Counts One through Four are  repeated and re-alleged as if set forth at length herein.

2.      The actions of the Defendants have been taken under color of state law.

3.      The actions of the Defendants constitute violations of the rights of the  Plaintiff as are accorded her  by virtue of New Jersey State Constitution Article 1, paragraphs  1 and 6.

4.      The acts of the Defendants have been taken under color of law to deprive the Plaintiff of her rights under federal and state law and Constitutions, and are violations of  N.J.S.A. 10:6-2.

5.      The Plaintiff has been caused, and will continue  into the future  to suffer damages of an economic and non-economic nature as a consequence of these violations which have been more fully described in the preceding Counts.

**WHEREFORE** the  Plaintiff  demands judgment  against  the Defendants, Defendants,

individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas  Kane, Barbara Gordon, Elnardo Webster, Jr.,  the City of Jersey City,  John Does (1-15), individuals whose names are presently unknown**,**  for  compensatory damages together with interest and costs  of  suit;  as well as counsel fees pursuant to N.J.S.A. 10:6-2,  punitive  damages;, and such other just and equitable relief as this Court may order.

Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas Kane, Elnardo Webster, Jr.,  the City of Jersey City,  and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**,** says:

## COUNT SIX
### [New Jersey LAD]

1.      Each  and every allegation of Counts One through Five are  repeated and re-alleged as if set forth at length herein.

2.      The Plaintiff Bloom is a female and entitled to the protections of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*.

3.      The aforesaid discrimination and reprisal actions of the Defendants Kane, Letizia and JCMUA Defendants, excluding Gordon, constituted a  violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*.

4.      The individual JCMUA Defendants and the individual Jersey City Defendants have acted to aid and abet the Jersey City in perpetrating the discriminatory acts of which Plaintiff complained.

5.      The JCMUA  has also failed to properly provide education, training and supervision of the actions of its personnel within the JCMUA in order to insure  and  enforce that the work

environment was not hostile to women or to prevent and/or dissuade retaliatory or reprisal actions against individuals who object to the policies and practices employed within the JCMUA.

6.     The JCMUA has failed to provide an effective mechanism by which grievances and complaints of gender-based harassment, sexual harassment and retaliation or reprisal for objections to same, may be addressed and remedied.

7.     The actions of the individual Defendants have resulted in liability owed by the individual Defendants to the Plaintiffs for their individual commission or omission of actions which have demonstrated a) a deliberate indifference to the harassment and gender discrimination directed against Plaintiffs , or the retaliation to which they were subjected resulted in the harm to the Plaintiffs, or b) active participation in the ratification, condonation or perpetuation of the harassment against these Plaintiffs,  and which have aided and abetted both the harassment and reprisal actions against the Plaintiffs.

8.     The aforesaid actions of the Defendants have proximately caused the Plaintiff s to incur injuries and damage, inclusive of, but not limited to, psychological damages, anxiety and emotional distress as well as lost wages and benefits.

9.     The actions of the Defendants in this matter have violated the rights of the Plaintiffs as set forth in N.J.S.A. 10:5-12d.

10.     The Plaintiff has been caused, and will continue  into the future  to suffer damages of an economic and non-economic nature as a consequence of these violations which have been more fully described in the preceding Counts.

**WHEREFORE**  the  Plaintiff  demands judgment  against  the Defendants, Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas Kane,  Elnardo Webster,

-27-

Jr.,  the City of Jersey City,  John Does (1-15), individuals whose names are presently unknown**,**  for compensatory damages together with interest and costs  of suit;  as well as counsel fees pursuant to N.J.S.A. 10:6-2,   punitive  damages;, and such other just and equitable relief as this Court may order.


Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia,  Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William  Macchi, Thomas  Kane, Barbara Gordon, Elnardo Webster, Jr.,  the City of Jersey City,  and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**,** says:


## COUNT SEVEN
### [Conspiracy to violate federal civil rights]

1.      Each  and every allegation of Counts One through Six are  repeated and re-alleged as if set forth at length herein.

2.      The actions of the Jersey City Defendants and the JCMUA Defendants have constituted a conspiracy among them to retaliate against the Plaintiff for expression of her First Amendment rights on issues of public concern and to cause her to be silenced from alerting the public to the tax and fiscal implications of the actions of both Jersey City and JCMUA as they pertained to the relationships and proposed business ventures with regard to the North Bergen connection fee, the Jersey City Franchise payments by JCMUA to Jersey City, United Water's faulty billing practices and the Jersey City insistence upon the payment of multi-million dollar BCI payment despite the faulty information being provided by United Water, as well as various other issues between the Defendant entities.

3.      The actions between the governmental Defendants have required the participation of the named individual Defendants and been required to be accomplished by joint action to ultimately

result in the termination of the Plaintiff from her livelihood and employment.

4.     The actions of the policymakers Defendants have been under color of state law and have deprived the Plaintiff of her federal civil rights as provided to her under the First and Fourteenth Amendments of the United States Constitution.

5.     As a consequence of the actions of the Defendants, the Plaintiff has been proximately caused to suffer humiliation, extreme anxiety, loss of income and prestige, and other damages.

**WHEREFORE** the Plaintiff demands judgment against the Defendants, Defendants, individually named as the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, John Does (1-15), individuals whose names are presently unknown**,** for compensatory damages together with interest and costs of suit; as well as counsel fees pursuant to N.J.S.A. 10:6-2, punitive damages; and such other just and equitable relief as this Court may order.

Plaintiff, **JENNIFER BLOOM**, by way of Complaint against the Defendants, individually named as the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, and in both individual and Jersey City Official Capacities: Jerramiah Healy, Carl Czaplicki, Brian O'Reilly and John Does (1-15), individuals whose names are presently unknown**,** says:

## COUNT EIGHT
**[intentional and/or negligent infliction of emotional distress]**

1.     Each and every allegation of Counts One through Seven are repeated and re-alleged as if set forth at length herein.

2.     The actions of the Jersey City Defendants and the named individual Defendants, whether intentionally and/or negligently, and whether jointly or severally, have caused the Plaintiff to suffer great emotional distress manifested both physically and psychologically, as well as damages of both an economic and non-economic nature.

3.     The actions of the Defendants have been outrageous in that they have exceeded the bounds of human decency in the devious and malicious manner by which they have been perpetrated by the individuals against the Plaintiff.

4.     Plaintiff gave notice of claims arising from the actions of the named Defendants, both entity and individuals, to Jersey City and to JCMUA which Tort Claims Notices were received by the Jersey City and JCMUA and their respective legal counsel on October 27, 2005.


**WHEREFORE** the Plaintiff demands judgment against the Defendants, Defendants, individually named as the Estates of Gerard Letizia, Howard Jackson and George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, Elnardo Webster, Jr., the City of Jersey City, John Does (1-15), individuals whose names are presently unknown, for compensatory damages together with interest and costs of suit; as well as counsel fees pursuant to N.J.S.A. 10:6-2, punitive damages; and such other just and equitable relief as this Court may order.

## **JURY DEMAND**

_____Plaintiffs demand trial by jury on all issues involved herein.

Respectfully Submitted,

**D. GAYLE LOFTIS**

Dated: August 4, 2006