UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNIFER BLOOM,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**JERSEY CITY MUNICIPAL UTILITIES AUTHORITY, THE ESTATES OF GERARD LETIZIA, HOWARD JACKSON, GEORGE KELLY, EILEEN GAUGHAN, KATHLEEN HARTYE, KATHLEEN CURRAN, WILLIAM MACCHI, THOMAS KANE, BARBARA GORDON, ELNARDO WEBSTER, JR., THE CITY OF JERSEY CITY, JERRAMIAH HEALY, CARL CZAPLICKI, BRIAN O'REILLY,**<br><br>      **Defendants.** | **MASTER FILE: 06-CV-3526 (WJM)**<br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

D. Gayle Loftis
210 River Street
Hackensack, NJ 07601

(*Counsel for Plaintiff*)

Leon B. Piechta
O'Donnell, Piechta
414 Eagle Rock Avenue
Suite 206
West Orange, NJ 07052-4211

Peter J. King
75B North Beverwyck Road
P.O. Box 375
Lake Hiawatha, NJ 07034

Charles P. Daglian
34–35 Jones Street
(At Journal Square)
Jersey City, NJ 07306

Terrence J. Bolan
Bolan Jahnsen Reardon, Esqs.
830 Broad Street
P.O. Box 7760
Shrewsbury, NJ 07702

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Several Defendants in this case have moved on summary judgment to dismiss Plaintiff's claims. These Defendants argue that Plaintiff's claims are arbitrable under an agreement that Plaintiff entered with Defendant Jersey City Municipal Utilities Authority ("JCMUA"). This Court finds that Plaintiff did enter into an agreement to arbitrate these claims against JCMUA and its officials both in their individual and official capacities but that the obligation to arbitrate does not extend to her claims against the other Defendants in this case. Accordingly, the Court stays this case until the conclusion of Plaintiff's arbitration against JCMUA.

I.   **FACTS AND PROCEEDINGS**

This case centers around the scope and enforceability of an arbitration agreement between Plaintiff and Defendant Jersey City Municipal Utilities Authority ("JCMUA"). The issue is which of Plaintiff's claims—if any—she must submit to arbitration under this agreement.

   A.   **The Arbitration Agreement**

Plaintiff was the Director of Administration and Financial Management for JCMUA, a municipal instrumentality that manages the sewage and water systems in Jersey City. (Compl. ¶¶ 2, 38.) JCMUA policies established an alternative dispute resolution procedure, which included arbitration. (Mot. for Summ. J. Ex. B.)

JCMUA informed its employees of this procedure by issuing them a Policies and Procedures Manual, which contained an array of JCMUA policies and procedures. (Ex. B.)  The manual provided, inter alia, that "JCMUA has established an Alternative Dispute Resolution Procedure Program ("ADR" or "Program") for all matters involving employee disputes and discipline." (Ex. B.)  The manual provided that the final step of the program would consist of arbitration: "If an employee is not satisfied with the results of the Internal Meeting and the issue falls within the scope of the Arbitration Policy, the employee may request arbitration, which is the last step of the Alternative Dispute Resolution Procedure Program." (Ex. B.)

With the exception of the alternative dispute resolution program, JCMUA intended

that the Policies and Procedures Manual would not constitute binding contract. They merely required each employee to sign an Employee's Acknowledgment of Receipt of Manual ("Acknowledgment"). (Mot. for Summ. J. Ex. D.) This document stated, in relevant part, as follows:

> I understand that the policies and procedures described in this Manual are neither a promise of employment nor a promise of conditions of employment. . . . I further understand that the contents of the Manual are for information only and are not intended to create or constitute a contract. I understand the Manual is only a brief summary of benefits currently offered by the JCMUA and an overview of some of its work rules and policies. (Ex. D.)

With respect to the alternative dispute resolution program, however, JCMUA sought to create a binding agreement with its employees. JCMUA required each employee to sign an Employee's Acknowledgment of Receipt and Agreement to the JCMUA's Alternative Dispute Resolution Procedures ("Arbitration Agreement"). (Mot. for Summ. J. Exs. D, E.) This document stated, in relevant part and in contrast to the document mentioned above, as follows:

> I understand that by accepting employment and being able to receive increases in compensation and benefits, I am agreeing to the important term and condition of my employment that I will use JCMUA's internal and external employment dispute resolution process to resolve legal claims against JCMUA — therefore, rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that this term of my employment replaces and supersedes any

>prior agreement concerning this term and cannot be changed in any way except in writing signed by me and the Executive Director of the JCMUA . . . . (Ex. E.)

JCMUA issued these documents to Plaintiff two separate times during the relevant period of her employment. JCMUA issued a set of these documents to Plaintiff initially in 2004. (Exs. D, E.) At that time, Plaintiff signed both the Acknowledgment and the Arbitration Agreement. (Exs. D, E.) JCMUA then in 2005 issued another set of these documents to Plaintiff with only minor alterations that are not relevant here. (Mot. for Summ. J. Ex. C.) Plaintiff never signed this second set of documents. (Opp'n to Mot. for Summ. J. 1.)

**B.     Plaintiff's Claims**

Plaintiff alleges that in 2004 she began to discover that JCMUA was engaging in unethical and illegal acts concerning, inter alia, whether JCMUA was properly withholding its employees' wages and benefits. (Compl. ¶ 47.) Plaintiff alleges that when she reported her discoveries to JCMUA officials, they declined to investigate. (Compl. ¶47.) Furthermore, Plaintiff alleges that JCMUA retaliated against her with both personal and professional attacks, which culminated in her termination. (Compl. ¶¶ 46–84.)

In response Plaintiff sued an array of parties: (1) JCMUA, (2) several JCMUA officials both in their individual and official capacities, (3) Jersey City, (4) Mayor of Jersey City Jerremiah Healy, and (5) several Jersey City officials both in their individual

5

and official capacities. (Compl. ¶¶ 2–34.) Plaintiff asserts many claims, including claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, under the New Jersey Law Against Discrimination, and under the New Jersey Civil Rights Statutes.

### C. The Instant Motions

Now several Defendants file this motion for summary judgment. JCMUA and its officials and employees whom Plaintiff has sued move to dismiss the entire suit. (Mot. for Summ. J. 6.) They argue that by signing the Arbitration Agreement, Plaintiff has agreed to arbitrate all of her claims. (Mot. for Summ. J. 6, 9–10.) They further argue that because all of her claims are subject to arbitration, this Court should dismiss the entire case.[1] (Mot. for Summ. J. 10.)

Plaintiff opposes this motion and puts forth three arguments that she has not submitted to arbitration. First, Plaintiff argues that she cannot be compelled to arbitrate her claims because she never signed the 2005 Arbitration Agreement. (Opp'n to Mot. for Summ. J. 1.) Second, Plaintiff argues that the arbitration provision is void as a contract of adhesion. (Opp'n to Mot. for Summ. J. 7.) Third, Plaintiff argues that parties cannot be compelled to arbitrate § 1983 claims. (Opp'n to Mot. for Summ. J. 7.)

---

[1] Several other Defendants have submitted similar motions or requests, all of which concern the arbitrability of Plaintiff's claims. For example, Jersey City Business Administrator Brian O'Reilly has submitted a brief arguing that Plaintiff must arbitrate her claims against JCMUA but that as a Jersey City employee, O'Reilly cannot be compelled to participate in the arbitration. Given that JCMUA's motion requires this Court to address the arbitrability of all Plaintiff's claims, this Opinion will not further discuss the other motions.

In addition to these arguments, this Court must address which parties can compel Plaintiff to arbitrate.

## II.   DISCUSSION

Arbitrability is a matter of contract.  Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir. 1984).  To compel arbitration of a claim, a party seeking to arbitrate must demonstrate that the opposing party has contractually agreed to do so.  Whether a party has so agreed is a question for this Court to answer as a threshold matter.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  To make that determination, this Court will look to New Jersey's law of arbitration and contracts.[2]

### A.   Plaintiff's Obligations to Arbitrate Under the 2004 and 2005 Manuals

Plaintiff argues that she cannot be compelled to arbitrate her claims because she never signed the 2005 Agreement.  This Court disagrees.

The Supreme Court of New Jersey uses a two-part test to determine if a party has contractually agreed to arbitrate a claim.  Leodori v. CIGNA Corp., 814 A.2d 1098, 1104, 1105 (N.J. 2003).  First, the arbitration provision must reflect an unambiguous intention

---

[2] Although the arbitration of an employment contract is governed by the Federal Arbitration Act, EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002), that Act instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate.  Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989); see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) (holding that § 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

to arbitrate a claim.  Id. at 1104.  Second, the parties must have agreed to that provision.  Id. at 1105.

The Agreement meets the first prong of the test.  A valid arbitration contract must clearly state its purpose to ensure that litigants know they are waiving their right to sue.  Garfinkle v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 673 (N.J. 2001).  The Manual clearly states that arbitration is a component of JCMUA's dispute resolution procedures.  (Mot. for Summ. J. Ex. B.)  Also, the Agreement clearly states that Plaintiff's accession to the Manual's arbitration provisions is a contractual condition of her employment.  (Mot. for Summ. J. Ex. E.)  The Agreement accordingly satisfies the requirements for a valid arbitration contract.

Indeed, the New Jersey Supreme Court has found a valid arbitration agreement in a situation quite similar to this case, in which the employer promulgated an arbitration policy in an employee manual and sought to bind its employees only to the arbitration provision.  In Leodori, the employer initially provided its employees with a handbook that detailed a number of the employer's policies and procedures, including an arbitration procedure.  Leodori, 814 A.2d at 1101 (the "You and CIGNA" handbook).  With this handbook, the employer distributed an acknowledgment form—stating only that the employee had received a handbook and had reviewed the policies therein—which the plaintiff employee signed.  Id. at 1101.  The employer also distributed an agreement form stating that arbitration constituted a term of employment.  Id. at 1101–02.  The plaintiff

8

employee did not sign this second form.  Id.  Subsequently, the plaintiff employee filed claims in state court against the employer, alleging that the employer had illegally retaliated against him for reporting the employer's wrongdoing.  Id. at 1103.  The trial court dismissed the claims as arbitrable, but the Appellate Division reversed, and the Supreme Court affirmed.  Id.  The Supreme Court held that the plaintiff was not bound by the arbitration provision because she signed only the acknowledgment form—not the arbitration-agreement form.  Id. at 1106.  The court found the plaintiff's refusal to sign the agreement dispositive: "Without plaintiff's signature on the Agreement . . . we cannot enforce the arbitration provision."[3]  Id.  Thus the JCMUA Arbitration Agreement—if signed—would be sufficient to bind Plaintiff to arbitrate her claims.

Whether the Arbitration Agreement meets the second prong of the Leodori test depends upon whether the Plaintiff agreed to arbitrate her claims given that she signed the 2004 Arbitration Agreement but not the 2005 Arbitration Agreement.  This Court finds that she did.  By signing the 2004 Arbitration Agreement, Plaintiff undoubtedly agreed to arbitrate her claims against JCMUA, as explained in the analysis of the first prong.  A modification of this contractual agreement would have required new consideration and the clear assent of the both parties.  County of Morris v. Fauver, 707 A.2d 958, 965 (N.J. 1998).  Here, there is no evidence of such new consideration or clear assent.  The fact that

---

[3] The court also noted that "[s]ignificantly, plaintiff did not sign the Agreement." Id. at 1102.

9

JCMUA issued the 2005 Arbitration Agreement—which <u>Leodori</u> makes clear cannot bind Plaintiff without her signature—did not alter Plaintiff's obligation to arbitrate her claims under the 2004 Arbitration Agreement. The 2004 Arbitration Agreement thus remained in place and obligated Plaintiff to arbitrate her claims against JCMUA.

### B. Whether the Arbitration Agreement Is an Unenforceable Contract of Adhesion

Plaintiff argues that the Arbitration Agreement is unenforceable as a contract of adhesion. She notes that the Arbitration Agreement requires arbitration to be initiated by the employee within a thirty-day period, and she argues that this is a particularly oppressive term. (Opp'n to Mot. for Summ. J. 7.) This Court disagrees and finds that the Arbitration Agreement is enforceable

A contract of adhesion is one that is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, with little or no opportunity for negotiation over terms. <u>Martindale v. Sandvik, Inc.</u>, 800 A.2d 872, 880 (N.J. 2002). Such contracts are not per se unenforceable, but courts will subject them to heightened scrutiny. <u>Muhammad v. County Bank of Rehoboth Beach, Del.</u>, 912 A.2d 88, 96–97 (N.J. 2006). In determining a contract of adhesion's enforceability, courts will examine the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interest affected by the contract. <u>Rudbart v. N. Jersey Dist. Water Supply Comm'n</u>, 605 A.2d 681, 687 (N.J. 1992).

Considering these factors, courts in New Jersey have upheld arbitration provisions in employment contracts—even though they were contracts of adhesion. See Martindale, 800 A.2d at 879–81. These courts have noted that requiring arbitration of employment disputes is not particularly oppressive, the provision puts employees on notice of their waiver of litigation rights, and that public policy favors arbitration. Martindale, 800 A.2d at 879–81.

The Arbitration Agreement here does not appear different in nature from that considered by the court in Martindale. Also, the thirty-day requirement that Plaintiff focuses on does not seem particularly oppressive. Accordingly, this Court holds that the Arbitration Agreement is enforceable.

C.  **Arbitration of § 1983 Claims**

Finally, Plaintiff argues that parties may never be compelled to arbitrate § 1983 claims.[4] (Opp'n to Mot. for Summ. J. 7.) This Court disagrees.

Courts have cast some doubt on the compulsory arbitration of § 1983 claims, but

---

[4]Alternatively, Plaintiff argues that the Arbitration Agreement does not provide for the arbitration of § 1983 claims. (Opp'n to Mot. for Summ. J. 7.) This is incorrect. While the Arbitration Agreement does not specifically state that § 1983 claims are arbitrable, it does state that claims under several other federal statutes are available (such as the Civil Rights Act of 1964) and also subjects to arbitration claims under "any other federal . . . statute . . . regarding employment . . . ." (Mot. for Summ. J. Ex. E.) Given that § 1983 is merely a legal vehicle for some of these claims, see Albright v. Oliver, 510 U.S. 266, 271 (1994), it would be contradictory to hold that the Arbitration Agreement provides for arbitration of federal employment claims but not § 1983 claims. See Maine v. Thiboutot, 448 U.S. 1, 4 (1980) (holding that § 1983 creates a cause of action for violations of all federal statutes).

they have not widely held that parties may not be compelled to arbitrate such claims. In McDonald v. City of W. Branch, Mich., 466 U.S. 284, 287–92 (1984), the Court held that federal courts may not accord preclusive effect to an unappealed arbitration award in a case brought under § 1983. The Court reasoned that "an arbitration proceeding cannot provide an adequate substitute for a judicial trial." Id. at 292. However, the Court did not hold that § 1983 claims could not be arbitrated and noted that courts in the future would have to decide how much weight to accord such arbitrations. Id. at 292 n.13 ("[A]n arbitral decision may be admitted as evidence in a § 1983 action.").

The Court then in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), clarified further its position with respect to arbitration of statutory claims. In Gilmer, the Court disclaimed that McDonald precluded arbitration of any statutory claims, clarifying that McDonald rather dealt with the question of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Id. at 33–35. The Court further held that although not all statutory claims may be appropriate for arbitration, where parties have agreed to arbitrate a specific statutory claim, the party seeking to avoid arbitration bears the burden of showing that Congress intended to preclude a waiver of a judicial forum for that claim. Id. at 26.

This Court finds no clear congressional indication that parties may not be compelled to arbitrate § 1983 claims. Neither the Supreme Court nor the Third Circuit have found that Congress intended to preclude compulsory arbitration of such claims.

Nor does Plaintiff argue this. Plaintiff's sole support for her argument is a 2003 unpublished case: Tripp v. Renaissance Advantage Charter School, No. Civ. A. 02-9366, 2003 WL 22519433 (E.D. Pa. October 8, 2003). This Court finds such an unpublished case insufficient to satisfy Plaintiff's burden to show that Congress intended to preclude § 1983 arbitration, particularly in light of dicta in McDonald that courts may review such arbitration. Accordingly, this Court holds that JCMUA may compel arbitration of Plaintiff's § 1983 claims.

    **D.**    **Whether Defendants Other Than JCMUA May Compel Arbitration**

Plaintiff does not directly argue that only JCMUA may compel arbitration. However, Defendant O'Reilly disclaims an obligation to arbitrate on the ground that he was not a signatory to the Arbitration Agreement. Accordingly, this Court finds it prudent to determine which Defendants may compel arbitration.

Once again, the starting point of the analysis is that arbitration is a matter of contract. Nonsignatories to an arbitration agreement may not normally compel arbitration. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993); Jansen v. Salomon Smith Barney, Inc., 776 A.2d 816, 819 (N.J. Super. Ct. App. Div. 2001). However, nonsignatories of an arbitration agreement may be bound if they are principals or agents of a signatory. Pritzker, 7 F.3d at 1121; Jansen, 776 A.2d at 820. The question is whether the nonsignatory would be bound to the arbitration agreement by traditional principles of contract and agency law. Bel-Ray Co. v. Chemrite

13

(Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999).

With respect to Jersey City, the officials thereof, and Mayor Healy, Defendants have failed to set forth a basis for holding that JCMUA was acting as their principal or agent when it entered into the Arbitration Agreement. Courts have often held that municipal departments are not agencies of the municipality itself. See Rollins v. Ellwood, 565 N.E.2d 1302, 1310 (Ill. 1990) ("[E]ven under Illinois agency law no agency relationship between Baltimore and the police department has been proved . . . ."); Grosso v. City of Paterson, 150 A.2d 94, 98–99 (N.J. Super. Law Div. 1959) ("Neither the board of health, its members nor its employees are agents of the municipality . . . ."). But see N. Jersey Dist. Water Supply Comm'n v. State Water Policy Comm'n, 29 A.2d 617, 617 (N.J. 1943 ("Passaic Valley Water Supply Commission is a public body organized by an act of the legislature to represent and act as the agent of the Cities of Paterson, Passaic and Clifton for the distribution of water and water supplies."). This Court has no basis upon which to bind Jersey City, its officials, or Mayor Healy to the arbitration agreement signed by JCMUA. Thus, the Court holds that only JCMUA and its officials, in both their individual and official capacities, may compel Plaintiff to arbitrate.[5]

## III. CONCLUSION

In light of the foregoing, this Court holds that only JCMUA and its officials in both their individual and official capacities—the Estates of Gerard Letizia, Howard

---

[5] Plaintiff's counsel concedes that if JCMUA may compel arbitration, then so too may its officials in both their individual and official capacities.

Jackson, George Kelly, Eileen Gaughan, Kathleen Hartye, Kathleen Curran, William Macchi, Thomas Kane, Barbara Gordon, and Elnardo Webster, Jr.—may compel arbitration of Plaintiff's claims.  The remaining Defendants—Jersey City, Mayor Healy, Carl Czaplicki, and Brian O'Reilly—must abide by Plaintiff's choice of a judicial forum.

Since only some of Plaintiff's claims must be submitted to arbitration and since Defendant O'Reilly has moved to stay the litigation pending this arbitration, this Court must stay the litigation of those claims subject to arbitration.  See 9 U.S.C. § 3; Lloyd v. Hovensa, LLC., 369 F.3d 263, 269 (3d Cir. 2004) (holding that the plain language of the Federal Arbitration Act (FAA) affords district court no discretion to dismiss case where one of the parties applies for a stay pending arbitration).  However, this Court cannot stay the litigation of those claims not subject to arbitration.  CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 138–39 (3d Cir. 2004).

A suitable Order accompanies this Opinion.


                                                    s/ William J. Martini
                                                    William J. Martini, U.S.D.J.

15